**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

—————————————————————— )
HUMANA GOVERNMENT BUSINESS, INC. )
305 N. HURSTBOURNE PARKWAY )
LOUISVILLE, KY 40222, )
      )
       Plaintiff, )
      )
         v. )   Civ. A. No. 18-1246
      )
DEFENSE HEALTH AGENCY )
7700 ARLINGTON BOULEVARD )
SUITE 5101 )
FALLS CHURCH, VA 22042, )
      )
       Defendant. )
—————————————————————— )

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

In this "reverse FOIA" action, Plaintiff, Humana Government Business, Inc., doing business as Humana Military (hereinafter, "Humana Military"), for its Complaint, states as follows:

### JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, because the action arises under the laws of the United States.  Specifically, this action arises under the Trade Secrets Act (18 U.S.C. § 1905), the Freedom of Information Act ("FOIA") (5 U.S.C. § 552(b)(4)) and the judicial review provisions of the Administrative Procedure Act (5 U.S.C. §§701-706).  Plaintiff also invokes this Court's authority under 28 U.S.C. §§ 2201-2202.

### THE PARTIES

2.     Plaintiff Humana Government Business, Inc. is a Delaware corporation having its principal place of business in Louisville, Kentucky.

3.       Defendant, the Defense Health Agency ("DHA"), is headquartered in Falls Church, Virginia.  DHA is an agency within the Department of Defense of the United States and an agency as defined by the Administrative Procedure Act, 5 U.S.C. § 701(b)(l).  It is also an agency of the United States which falls within the scope of 28 U.S.C. § 1391.  DHA has custody and control over a contract awarded to Humana Military that reflects Humana Military's confidential and proprietary commercial and technical information.

## VENUE

4.       Venue is proper in the District under 28 U.S.C. § 1391(e), 5 U.S.C. § 703, and 5 U.S.C. § 552(a)(4)(B).

## INTRODUCTION

5.       This "reverse FOIA" action arises out of DHA's final decision dated May 22, 2018 ("Release Decision") to disclose certain confidential and proprietary commercial and technical information of Humana Military as reflected in Contract No. HT9402-16-C-0001 between Humana Military and DHA under which Humana Military provides certain health-related and administrative support services to TRICARE-eligible beneficiaries (*e.g.*, current and former military personnel and their families) under the Department of Defense's TRICARE program for the East Region of the United States (the "T-2017 East Region Contract").

6.       DHA indicated that its Release Decision is a final agency action within the meaning of 5 U.S.C. § 704 by stating that the relevant "disclosure . . .  will occur May 30, 2018" unless Humana Military sought judicial action to prevent such disclosure.

7.       On May 24, 2018, DHA agreed to withhold the information at issue from disclosure pending resolution of this court action, provided that Humana Military sent DHA notice of this filing before close of business on May 29, 2018.

8.     Humana Military seeks to protect from public disclosure technical "enhancements" that Humana Military voluntarily proposed for performance of the T-2017 East Region Contract that are in excess of the minimum technical requirements and performance standards identified in the T-2017 Request for Proposals and that DHA subsequently incorporated into the T-2017 East Region Contract at Section H.15.  Those technical enhancements are referred to herein as "Section H.15 Enhancements."

9.     The information at issue is exempt from disclosure under Exemption 4 of FOIA. *See* 5 U.S.C. § 552(b).  Exemption 4 protects "matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).  The Trade Secrets Act, 18 U.S.C. § 1905, also precludes DHA from releasing Humana Military's proprietary and confidential commercial and technical information that is incorporated into, or otherwise reflected in, the T-2017 East Region Contract.

10.    Therefore, DHA's determination that the Section H.15 Enhancements are not exempt from release under FOIA is a violation of the Administrative Procedure Act.

11.    Humana Military seeks a declaratory judgment that the Section H.15 Enhancements are confidential, that the release of such information would violate the Trade Secrets Act, and that DHA's Release Decision was and is arbitrary, capricious, an abuse of discretion, and contrary to law.  Humana Military also seeks a permanent injunction preventing DHA from disclosing Humana Military's confidential and proprietary commercial and technical information as reflected in the Section H.15 Enhancements.

## FACTS

### The TRICARE Program

12.      DHA is a joint, integrated Combat Support Agency that enables the Army, Navy, and Air Force medical services.  DHA's mission is to deliver integrated, affordable, and high quality health services to Military Health System beneficiaries.

13.      Among other things, DHA is charged with running the Department of Defense's TRICARE program, which is a managed health care program that provides Government-supported healthcare to about 8.8 million active military personnel and other eligible beneficiaries outside of military treatment facilities.  Eligible members include active duty service members and their families, military retirees and their families, and family member survivors.

14.      Under the TRICARE program, eligible beneficiaries have two health care options: TRICARE PRIME (a health maintenance organization (HMO)-type plan, in which enrollees are required to use military treatment facilities or network providers or pay higher out of network co-payments) and TRICARE Select (a standard fee-for-service plan).

### The T-2017 Request for Proposals

15.      On or about April 24, 2015, DHA issued RFP No. HT9402-15-R-0002 seeking two Managed Care Support ("MCS") contractors to provide managed care and administrative support services to TRICARE-eligible beneficiaries (the "T-2017 RFP").  DHA issued seven amendments to the T-2017 RFP prior to the receipt of initial proposals on July 23, 2015.

16.      The T-2017 procurement is the fourth generation of the MCS contracts under the TRICARE program, which is the successor contract to the prior TRICARE contract, called "T-3."

17.     Under the T-3 contracts, the United States was divided into three regions:  North, South, and West, with one MCS Contractor responsible for each region.  Under T-2017, the North and South regions were combined, which left just two regions:  East and West, with one MCS contractor responsible for each region.  The consolidation from three MCS regions to two MCS regions increased competition for the T-2017 contracts.

18.     The purpose of the contract is to provide managed care support services for the TRICARE program.  Specifically, the T-2017 RFP provided that "[t]he MCS Contractors (MCSC) shall assist the Military Health System in operating an integrated healthcare delivery system combining resources of the military's direct medical care system and the Contractor's managed care support to provide health, medical and administrative support services to TRICARE-eligible beneficiaries."  *See* T-2017 RFP § C.1.1.

19.     Through the T-2017 procurement, DHA sought to enter into a MCS contract for two regions:  (a) an East Region with approximately 5.9 million TRICARE-eligible beneficiaries and (b) a West Region with approximately 2.9 million TRICARE-eligible beneficiaries.

20.     Under each MCS contract, MCS contractors would perform administrative services necessary to support the TRICARE program and the provision of healthcare to TRICARE beneficiaries, as identified in Section C.2 of the RFP, which included (a) establishing and maintaining provider networks; (b) managing referrals between military treatment facilities and the civilian network; (c) managing beneficiary enrollment; (d) providing medical management services (including utilization management, case management, and chronic care/disease management); (e) providing customer service for both beneficiaries and providers; and (f) processing claims.

21.     In performing the MCS services, the MCS contractor must comply with applicable federal statutes, regulations, and TRICARE manuals.  The following four TRICARE manuals are incorporated by reference into the RFP:  TRICARE Operations Manual ("TOM"), TRICARE Policy Manual ("TPM"), TRICARE Reimbursement Manual ("TRM"), and the TRICARE Systems Manual ("TSM").  The TOM provides standards for TRICARE MCS contractor operations that are relevant to the technical requirements for the T-2017 contracts.

22.     Pursuant to the T-2017 RFP, MCS contractors for the TRICARE program must "underwrite the cost of civilian healthcare services provided to all TRICARE-eligible beneficiaries who are enrolled in the contract region, or for nonenrollees who reside in the contract region" except for certain identified non-underwritten categories.  T-2017 RFP § H.1.1; *see also* 10 U.S.C. § 1072(7) ("The term 'TRICARE program' means the managed health care program . . . and includes the competitive selection of contractors to financially underwrite the delivery of health care services[.]").

23.     Consistent with the Congressional goals of the TRICARE program, the T-2017 RFP provided for certain underwriting mechanisms by which the MCS contractors would assume certain financial risks based on each contractor's ability to manage certain healthcare costs.  T-2017 RFP § H.2.

**Best Value Award of the T-2017 Contracts**

24.     In selecting MCS contractors, Congress has directed DHA to make award to contractors that "provide the best value to the United States to the maximum extent consistent with furnishing high-quality health care in a manner that protects the fiscal and other interests of the United States."  10 U.S.C. § 1073a(a).  In making this determination, DHA must afford greater weight to technical factors as compared to price.  10 U.S.C. § 1073a(b).

25.     Consistent with its statutory mandate, the T-2017 RFP contemplated award to the offeror whose proposal provided the best value to the government in each region, stating that "[t]he Government seeks to award to the Offeror who meets or exceeds the requirements and gives DHA the best value."  T-2017 RFP § M.2.1.

26.     To identify the offeror proposing the "best value," the T-2017 RFP committed DHA to evaluate each proposal against the following factors and subfactors:

    A.  Factor 1 – Technical/Management

        i.     Subfactor 1 – Network Management

        ii.    Subfactor 2 – Referral Management

        iii.   Subfactor 3 – Medical Management

        iv.    Subfactor 4 – Customer Service

        v.     Subfactor 5 – Claims Processing

        vi.    Subfactor 6 – Program Planning and Control

        vii.   Subfactor 7 – Transition Management

    B.  Factor 2 – Past Performance

    C.  Factor 3 – Price/Cost

    D.  Factor 4 – Small Business Participation

27.     The T-2017 RFP provided that the evaluation of each offeror's proposed Technical/Management approach would be one of the two most important evaluation factors for DHA in making its award decision.  Factor 1 (Technical/Management) and Factor 2 (Past Performance) were of equal weight and, individually, were each more important than Factor 3 (Price/Cost).  Factor 4 (Small Business Participation) was evaluated on an acceptable/non-acceptable basis.

28.     For Factor 1, the T-2017 RFP provided that each subfactor would receive a Technical/Management rating and a proposal risk ratings.

29.     For the seven subfactors in Factor 1, Subfactor 6 was most important, Subfactor 7 was the next most important and more important than Subfactors 1 through 5 individually, and Subfactors 1 through 5 were weighted equally.

30.     For the Factor 1 (Technical/Management) rating, the T-2017 RFP stated that, "[f]or each of the subfactors of the Technical/Management factor, the Government will evaluate the quality of the Offeror's technical solution for meeting the Government's requirement and assign a Technical Rating . . . [that depicts] how well it satisfies the Government's requirements for the subfactors."  T-2017 RFP §§ M.5, M.5.1.1.1.

31.     The possible technical ratings were Blue/Outstanding, Purple/Good, Green/Acceptable, Yellow/Marginal, and Red/Unacceptable.

32.     For the Factor 1 (Technical/Management) risk factors, the T-2017 RFP stated that "the Government will assess the degree to which the proposed approach has the potential for disruption of schedule, increased cost, degradation of performance, the need for increased Government oversight, and the likelihood of unsuccessful contract performance."  T-2017 RFP § M.6.1.

33.     The possible risk ratings were Low, Moderate, and High.

34.     The T-2017 RFP sought written technical proposals from the offerors that would effectively demonstrate to DHA each offeror's understanding of the requirements, and provide a successful technical solution for the prospective contract.

**The T-2017 RFP Invited Offerors to Propose Technical Enhancements**

35.     The T-2017 RFP invited, but did not require, offerors to propose Technical enhancements by proposing elements that would "exceed the Government's minimum requirements including performance standards that exceed the minimum standard or additionally offered performance standards."  T-2017 RFP § L.6.1.

36.     Offerors who chose to propose Technical enhancements were instructed to submit a separate list of the proposed enhancements and to provide enforceable contract language so that the Government, at its discretion, could incorporate some, none, or all of the proposed enhancements into the awarded contract if the Government determined that the proposed enhancements exceeded the minimum requirements or standards and were in the best interests of the Government.  T-2017 RFP § L.6.1.

37.     After internal discussions and deliberation, Humana Military voluntarily submitted proposals to perform the T-2017 East Region Contract and the T-2017 West Region Contract.  Humana Military's voluntary decision to submit proposals was based on its assessment of the potential economic benefits and risks.  Humana Military was not compelled either legally or economically to submit a proposal for either Region's contract.

38.     Humana Military also identified and voluntarily elected to propose Technical enhancements to distinguish itself from its competitors.  Humana Military evaluated and proposed an interrelated set of Technical enhancements that would work together as part of Humana Military's broader Technical proposal strategy that focused on high quality healthcare while balancing the need for a competitive administrative price and cost control.

39.     As applicable, Humana Military also voluntarily submitted proposed contractual language reflecting its proposed Technical enhancements so that DHA could incorporate those

proposed enhancements into the awarded contract if DHA agreed that the proposed enhancements exceeded the RFP's minimum requirements or standards and were in the best interests of the Government.

40.     Humana Military's proposed Technical enhancements were integral to its overall strategy of enhancing common tools of any managed care program to achieve the right balance of administrative costs, cost savings, and value to beneficiaries.

41.     Humana Military clearly marked its confidential proposal submissions with a legend pursuant to 48 C.F.R. § 52.215-1(e) to restrict their disclosure, consistent with the company's strict practice of closely guarding this type of information.

42.     Three other managed health care companies, including UnitedHealth Military & Veterans Services, LLC, Health Net Federal Services, LLC, and WellPoint Military Care Corporation (Anthem Health), submitted proposals for the award of the T-2017 East Region Contract.  Humana Military, UnitedHealth Military & Veterans Services, LLC, and Health Net Federal Services, LLC submitted proposals for the T-2017 West Region Contract.

### DHA's Award Decision

43.     Based on its evaluation, DHA determined that Humana Military's East and West Region proposals offered the best value in both the East and West Regions.

44.     Consistent with Humana Military's strategy and as demonstrated by DHA's own evaluation, the proposed Technical enhancements – now the Section H.15 Enhancements – provided a basis on which to differentiate Humana Military from its competitors in DHA's evaluation under the Technical/Management Factor; those technical enhancements directly contributed, either individually or combined, to (a) DHA's assessment of very high ratings under each Technical subfactor (mostly ratings of "Outstanding" or "Good") and (b) the Government's

decision that Humana Military's proposal offered the best value in the East Region (and the West Region). Indeed, DHA "concluded that Humana's proposal was superior to the other three proposals under the non-price/cost evaluation factors . . . ." See UnitedHealth Military & Veterans Services, LLC, B-411837.2 et al., Nov. 9, 2016, 2016 CPD ¶ 329 at 8.

45. The T-2017 RFP expressly provided that if an offeror was determined to be the best value in both regions, the offeror would be awarded the East Region Contract.

46. On July 21, 2016, DHA notified offerors of the decision to award the MCS Contract for the East Region to Humana (and to award the West Region to Health Net Federal Services, LLC, who was evaluated as the next best value proposal for the West Region after Humana Military's very highly rated proposal).

47. Because DHA determined that certain of Humana's proposed Technical enhancements exceeded the RFP's minimum requirements, it incorporated those into Section H.15 of the T-2017 East Region Contract. These are the Section H.15 Enhancements at issue in this action.

**DHA's Annual Determination of a "FOIA Releasable Contract"**

48. The T-2017 East Region Contract provides for Humana Military to submit, for each option period, a single conformed copy of the current contract, including modifications, and to identify in that copy, with brackets, portions of the contract that Humana Military proposes as exempt from release under FOIA, citing the applicable FOIA Exemptions invoked for each bracketed area. *See* T-2017 East Region Contract, § F.3 & Contract Data Requirements List ("CDRL") Item A1110 ("FOIA Releasable Contract"). CDRL Item A1110 explains that this submission will assist DHA "in its final determination of a releasable version of the contract" for each option period. *Id.*, CDRL A1110.

49.     On March 27, 2017, after contract award and the resolution of bid protests that had stayed contract performance, Humana Military provided its first submission to DHA with proposed redactions of the T-2017 East Region Contract and identified portions of the contract that are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552, and the Trade Secrets Act, 18 U.S.C. § 1905.

50.      In its March 2017 submission, Humana Military identified five categories of information that should be withheld from disclosure and provided an analysis addressing its justification for exempting from release under FOIA the following categories of information:

A.  Unit and CLIN prices

B.  Performance standard and incentive percentages and values

C.  Performance requirements in excess of RFP requirements (the Section H. 15 Enhancements)

D.  Personal contact information for Humana Military Executive officials

E.  Subcontracting Plan expenditures and percentages by small business category

51.     After review of Humana Military's March 27, 2017 submission, DHA determined that the five categories identified by Humana Military, including the Section H.15 Enhancements, would be redacted and withheld from public disclosure pursuant to applicable exemptions under FOIA.

### DHA's 2018 Decision to Release Section H.15 Enhancements Previously Withheld Under FOIA

52.     On January 18, 2018, Humana Military again followed the procedures outlined under CDRL Item No. A110 for identifying a FOIA releasable contract for the first option period.  Again, Humana Military provided DHA with a copy of the T-2017 East Region Contract with proposed redactions for information related to the same five categories, identified above, bracketed and highlighted in red boxes.

53.     Humana Military also provided DHA with its legal and factual analysis supporting its objection to the public disclosure of this voluntarily submitted confidential and proprietary information that was incorporated into or reflected in the T-2017 East Region Contract.

54.     On April 12, 2018, DHA responded to Humana Military's January 18 letter.  As relevant to this action, although DHA stated that it intended to withhold most of the information for which Humana Military had identified as exempt from disclosure under FOIA, DHA reversed course with respect to the Section H.15 Enhancements.

55.     DHA did not provide any reason or rationale explaining its decision to reverse course from its 2017 decision in which it had determined that FOIA exemptions applied to protect the Section H.15 Enhancements from public disclosure.  Instead, DHA's April 12 letter acknowledged that Humana Military's argument that it "need not show actual competitive harm has some merit and accuracy," but also stated that Humana Military had failed to sufficiently justify the applicability of Exemption 4(b) of FOIA to the Section H.15 Enhancements.

56.     DHA's April 12, 2018 letter provided Humana Military an opportunity to submit additional evidence to justify why the disclosure of the Section H.15 Enhancements would cause Humana Military competitive harm.  DHA further stated that Humana Military must "provide evidence revealing actual competition and a likelihood of substantial competitive injury sufficient to bring commercial information under FOIA Exemption 4(b)."

57.     On April 19, 2018, Humana Military provided additional evidence to support its request to protect from disclosure the Section H.15 Enhancements.

58.     Humana Military's April 19 submission included a six page letter setting forth, in detail, additional legal and factual analysis supporting Humana Military's position.

59.     Humana Military's April 19 submission also included a declaration from the Vice President and Chief Financial Officer of Humana Government Business.

60.     The Chief Financial Officer provided sworn testimony demonstrating that the information at issue is customarily kept confidential by Humana Military and explaining how Humana Military protects such information from public disclosure.  He described a robust set of standard operating procedures which protects proposal information during the proposal preparation phase and requires employees to sign non-disclosure agreements related to Humana Military's proprietary information.  He also described that Humana Military has a policy and standard practice to place a legend on proposal submissions with a proprietary notice stating that the documents should not be disclosed.  The Chief Financial Officer stated that consistent with Humana Military's policy, the restrictive legend appeared on every page of its proposal, including those containing Humana Military's proposed Technical enhancements.

61.     The April 19 submission also confirmed that Humana Military had voluntarily proposed confidential and proprietary Technical enhancements to exceed the minimum requirements for performance of the T-2017 East Region Contract.

62.     The Chief Financial Officer's testimony demonstrated that he was involved in the preparation of Humana Military's proposal for the T-2017 East Region Contract.  He confirmed that a key element of Humana Military's competitive strategy in response to the T-2017 RFP was to propose Technical enhancements because the T-2017 RFP provided that the Government sought to make "award to the Offeror who meets or exceeds the requirements and gives DHA the best value."  The Chief Financial Officer testified that Humana Military devoted significant time and resources to identify and propose Technical enhancements that would differentiate Humana Military from a potential lower cost managed care provider.

63.     Humana Military's April 19 submission also provided additional justification to substantiate the case for protection of the Section H.15 Enhancements based on Humana Military's knowledge of the fierce competition in the managed health care services market and the likely substantial harm to Humana Military's competitive position if DHA were to release the Section H.15 Enhancements.

64.     Humana Military's April 19 submission demonstrated again that there exists a highly-competitive, multibillion dollar market to provide managed healthcare services to the Government in support of TRICARE and similar programs.  Indeed, four well-qualified managed healthcare companies, including past TRICARE contractors, Humana Military, UnitedHealth Military & Veterans Services, LLC, and Health Net Federal Services, LLC submitted proposals for the award of the T-2017 East Region Contract.

65.     The Chief Financial Officer's declaration provided evidence demonstrating that the release of the information at issue would likely cause substantial competitive harm to Humana Military in competing for current and future work because many of the same major healthcare companies that submitted proposals for the T-2017 East Region Contract are likely to compete against Humana Military for other TRICARE contracts, other Federal managed care contracts, and managed healthcare contracts involving similar requirements and size.

66.     The Chief Financial Officer testified that the disclosure of Humana Military's Section H.15 Enhancements would provide Humana Military's competitors an opportunity to duplicate Human Military's successful technical approach, without its competitors' investing the same time and resources as Humana Military and without providing Humana Military equal access to its competitors' proposed technical approach.  As a result, Humana Military's

competitors would be in an improved position to compete more effectively against Humana Military in future managed health care procurements.

67.     On May 4, 2018, DHA responded to Humana Military's April 19 submission and stated, "DHA also finds there are portions your office identified as exempt, performance requirements in excess of Request for Proposal (RFP) requirements (Contract § H.15, H31-H37) . . . which shall be released since disclosure will not reasonably cause substantial competitive harm to your organization."

68.     DHA did not provide any additional detail or guidance supporting its decision to disclose the Section H.15 Enhancements.

69.     On May 9, 2018, DHA nonetheless provided Humana Military an opportunity to submit supplemental evidence supporting its claims that the Section H.15 Enhancements should be withheld from public release under FOIA.

70.     On May 18, 2018, Humana Military provided supplemental support for its proposed redactions of the Section H.15 Enhancements.

71.     In its May 18 submission, Humana Military explained how the disclosure of Humana Military's Section H.15 Enhancements would likely result in substantial competitive harm to Humana Military.  Specifically, Humana Military provided a supplemental declaration from its Vice President and Chief Financial Officer that further explained how each enhancement identified in Section H.15 reflects key elements of Humana Military's competitive strategy in response to the T-2017 RFP to differentiate Humana Military from its potentially lower price competitors.

72.     The supplemental declaration also included a chart describing in detail the technical merit and value of each enhancement identified in Section H.15 of the T-2017 East

Region Contract and how each enhancement provides added value to DHA, Military Treatment

Facilities, and TRICARE beneficiaries and, thus, a competitive advantage to Humana Military.

73.     Humana Military's May 18 submission described how Humana Military's Section

H.15 Enhancements will continue to provide significant competitive advantages for TRICARE

contracts, including upcoming procurements for other managed care aspects of the TRICARE

program (even if Congress makes changes to the current TRICARE program) as well as other

Federal managed healthcare contracts.

74.     On May 22, 2018, DHA sent a letter to Humana Military informing Humana

Military that it agreed that "Unit and CLIN prices, performance standard and incentive

percentages and values, personal contact information from Humana Military Executive officials,

and small business dollar amounts" were exempt from disclosure pursuant to Exemption 4 of

FOIA.

75.     However, DHA's letter also stated that it had decided not to protect from

disclosure any of the Section H.15 Enhancements that Humana Military had identified for

redaction.  As relevant to this action, the entire text of DHA's Release Decision follows:

"Nevertheless, the DHA also finds there are portions your office identified as exempt,

performance requirements in excess of RFP requirements (Contract § H.15, H31-H37) . . . which

shall be released since disclosure will not reasonably cause substantial competitive harm to your

organization.  Consequently, disclosure of T-2017 East Region contract with government

approved redactions will occur May 30, 2018, absent your office obtaining judicial relief to the

contrary."  DHA's letter did not provide any other rationale or explanation for its determination

to release the Section H.15 Enhancements over Humana Military's objection.

76.     If DHA proceeds with release of the above-identified proprietary and confidential information and technical information, Humana Military will be irreparably harmed because it would be impossible to make this information confidential again and because such release would cause it to suffer substantial competitive harm compared to its competitors.

77.     Humana Military seeks to protect from release an integrated list of proposed enhancements to its technical approach providing processes, insights, and context that are not publicly available and that Humana Military customarily keeps confidential.  Moreover, if the Section H.15 Enhancements are publicly disclosed, DHA would effectively provide a blueprint for Humana Military's competitors of the elements that Humana Military developed to win TRICARE competitions, allowing competitors to duplicate, to a large degree, the same Technical approach plan at Humana Military's expense, while at the same time attempting to minimize or eliminate Humana Military's competitive advantage.  The very fact that these Technical elements were incorporated into the T-2017 East Region Contract as Section H.15 Enhancements is what makes them competitively useful to Humana Military's competitors and the release of this integrated set of the enhancements would cause substantial competitive injury to Humana Military.

78.     Humana Military has exhausted all the available administrative remedies provided by DHA, as evident by the Release Decision's statement that Humana Military should seek judicial action to prevent disclosure of the Section H.15 Enhancements.

79.     Humana Military lacks an adequate alternative remedy at law.

80.     The Government, DHA, and the public at large will not be harmed by withholding from public release Humana Military's Section H.15 Enhancements, and any possible harm they

would suffer is substantially outweighed by the irreparable injury certain to occur to Humana Military.

81.     The requested relief also protects the public interest by preserving the competitive process in government contracting.  The public interest is also served by ensuring that Humana Military and other similarly situated managed care companies involved in similar procurements are not subject to having their confidential and proprietary Technical proposal information disclosed, and are able to fairly and equally compete for such contracts.

## COUNT I

### Violation of Administrative Procedure Act:
### DHA's Proposed Disclosure Is in Excess of Statutory Authority Under FOIA

82.     Humana Military realleges paragraphs 1 through 81 as if fully stated herein.

83.     FOIA authorizes agencies to disclose certain information upon a request for records.  5 U.S.C. § 552(a).  Exemption 4 of the FOIA, however, exempts privileged or confidential commercial or financial information from the application of the statute. 5 U.S.C. § 552(b).

84.     The Section H.15 Enhancements at issue reflect information that is obtained from a person (Humana Military) and that is Humana Military's confidential commercial or financial information.

85.     The disclosure by DHA of the information at issue here is exempt from mandatory disclosure under FOIA.  5 U.S.C. §552(b).

86.     DHA has failed to provide an explanation or rationale to support its determination that a FOIA Exemption did not apply and, therefore, the proposed disclosure is per se arbitrary and capricious.  DHA's apparent determination that the information at issue is not exempt from mandatory disclosure under FOIA was arbitrary and capricious, an abuse of discretion, not in

accordance with law, and the result of a severely defective administrative procedure, and therefore violated the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

87.     Accordingly, this Court should issue declaratory relief in Humana Military's favor as set forth in the Prayer for Relief, set aside the Release Decision, and permanently enjoin DHA from releasing the information identified above.

## COUNT II

### Violation of Administrative Procedure Act:
### DHA's Proposed Release Violates the Trade Secrets Act

88.     Humana Military realleges paragraphs 1 through 87 as if fully stated herein.

89.     The disclosure by DHA of the information at issue here is prohibited by the Trade Secrets Act, 18 U.S.C. § 1905.

90.     The Trade Secrets Act provides, among other things, that any government officer or employee who publishes, discloses, or makes known in any manner, or to any extent not authorized by law any information received in the course of employment that relates to trade secrets, confidential statistical data, or amounts of any income, profits, or losses, shall be fined or imprisoned, and shall be removed from office or employment. 18 U.S.C. § 1905.  Furthermore, when proprietary commercial and technical information falls within Exemption 4 of the FOIA, the government is precluded from releasing it under the Trade Secrets Act.

91.     It is not clear that DHA even considered whether the information at issue falls within the scope of the Trade Secrets Act, 18 U.S.C. § 1905.  To the extent that DHA made any determination that the information at issue does not fall within the scope of the Trade Secrets Act, it was arbitrary and capricious, an abuse of discretion, not in accordance with the law, the result of a severely defective administrative procedure, and therefore violated the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

92.     Accordingly, this Court should issue a declaratory relief in Humana Military's favor as set forth in the Prayer for Relief, set aside the Release Decision, and permanently enjoin DHA from releasing the information identified above.

## PRAYER FOR RELIEF

WHEREFORE, Humana Military requests this Court to:

i.      Declare that the Section H.15 Enhancements are exempt from release under FOIA;

ii.     Declare that the information at issue was voluntarily submitted to DHA, that it is customarily kept confidential by Humana Military, and that the information at issue therefore falls within the scope of FOIA Exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

iii.    In the alternative, declare that the information at issue is customarily kept confidential by Humana Military and that the information at issue therefore falls within the scope of FOIA Exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

iv.     In the alternative, declare that the information at issue is confidential, that its release to the public would likely cause Humana Military substantial competitive injury, and that the information at issue therefore falls within the scope of the FOIA Exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

v.      Set aside DHA's decision to release the Section H.15 Enhancements and declare that decision as arbitrary and capricious, an abuse of discretion, and not in accordance with law;

vi.       Permanently enjoin DHA, its officials, officers, employees, agents, contractors, and affiliate entities from disclosing the Section H.15 Enhancements; and

vii.       Grant such other and further relief as may be just and proper.


Respectfully submitted,

/s/ Paul R. Hurst

_____

Paul R. Hurst, D.C. Bar No. 454757
Michael J. Navarre, DC Bar No. 490126.
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington, D.C. 20036
Phone: (202) 429-8089
Fax: (202) 429-3902
Email: Phurst@steptoe.com
Email:  mnavarre@steptoe.com

***Counsel for Humana Government Business, Inc.***

Dated: May 29, 2018